Thank you. Good morning. May it please the court, counsel. My name is Megan Salon and I represent Mr. Gibbs in this appeal. The sole issue before the court this morning is whether or not the evidence supported the lower court's finding that the firearm located in an attic off of a hallway had facilitated or had the potential to facilitate Mr. Gibbs' possession of two alleged Alprazolam pills located in his kitchen. We contend that the evidence did not support that. In order for, under the guideline, the commentary, in order for the four-level enhancement to apply, the government must prove by a preponderance of the evidence that the firearm in question facilitated or had potential to facilitate the drug possession. There was an express finding by the district court that it did. And so we have to review that finding for clear error. I mean, how can you say that it's clearly erroneous that the gun was found in the attic, the pills were found in the kitchen? In a cabinet, yes, sir. In a cabinet. And that's closer than the gun and the drugs in the United States versus Flannery, when the drugs were across the street. Correct. But in Flannery, not only was the underlying felony a trafficking offense, but the defendant was, the law enforcement witnessed the defendant leave his car, go across the street, deal the drugs and go back to his car. And then when they got back, when they arrested him and searched his car, they found in the car a firearm and drugs. So in that case, first of all, the standard is different because it was a trafficking offense. So there, just mere proximity is enough. In our case, proximity isn't enough because just proximity doesn't show that it's going to facilitate. Not only does it not show that it's going to facilitate the possession, but we would argue that it wasn't even that proximate. It wasn't even that close. The other interesting thing about Flannery is that because the defendant was out in public with the firearm and the drugs, it made sense to assume that he might be using the firearm to protect the drugs. Where in this case, he was in his home, they weren't even close to one another, so it's hard to imagine what he would have been protecting against at 630 in the morning. So we have to, in order for you to win, we have to say that the express finding by the district judge was clearly erroneous. Correct. And I think that even the district court said that on page 29 of the sentencing transcript that the government hadn't demonstrated any evidence, hadn't presented any evidence that the firearm was actually even accessible in relation to the possession of the drugs. So it seems to me that actually the district court made its own finding that there wasn't evidence to support it, but then for whatever reason chose to impose the enhancement anyway. The district court said again and again that they didn't show that it was proximate, that it wasn't necessarily easily accessible, that he might need a ladder or a stool, that the government hadn't presented any photos to show how far away the attic was from the kitchen. There were no photographs showing how high the ceiling was, if Mr. Gibbs would have been able to get into the attic without a ladder. They also, the government conceded that the gun hadn't even necessarily been there that long, that it seemed clean, that it hadn't been used. So it seemed, and these were all findings that the district court made. So the district court, again, it sounds like the district court made a lot of evidentiary findings in Mr. Gibbs' favor, but then reached the wrong conclusion that in fact the firearm was there to facilitate his drug possession. Well, Mr. Gibbs got a below guidelines sentence, right? So if there's an error, why isn't it harmless? Well, because we would argue that the district court cited to the higher guidelines range when she imposed his sentence. She said that because of his history, she was leaning towards the higher guidelines range. So clearly she took into account that enhanced guidelines range. So I would say that without an explicit statement that the sentence would have been the same without the enhancement, that we have to assume that it wasn't harmless. Because without the enhancement, he wouldn't have received the same sentence. Did the district judge, aside from making the finding of facilitation, explain why she believed that the gun facilitated the possession of the pills? The only real reference that she made to, she briefly mentioned the fact that she believed that, excuse me, I'm going to say Xanax because I can't pronounce that word, that the Xanax pills had a street value of $23 and that maybe perhaps he could use a firearm to protect that because that was of high value. But we would argue that that's just not, $23 a pill just isn't that much money. And it seems unreasonable to think that someone would have a firearm in their home, in a separate room, to protect something that, you know, was only valued at $46. What if they were an addict and those were the pills? Well, I mean, I guess the value depends on the defendant. I'm just suggesting a value of more than $42 or $3 for the two pills. You mean that the value would be more because he was an addict? As did the district court. The district court was very careful in, frankly, working her way through this guideline sentencing and explaining it, according to the record. I think she was very careful in that she noted many times that there wasn't enough evidence to support the fact that they were related. But as I stated, I feel like she reached the wrong conclusion. All right. If you have no further questions, we ask that you remain for resentencing. Thank you. Thank you, Ms. Salat. We'll hear from Ms. Lahren for the government. Good morning, Your Honors. May it please the Court. This is Jordan Lahren on behalf of the United States. I think as the district court, or excuse me, as Your Honors have already made reference to, in order to overturn Mr. Gibbs' sentence in this case, this court would have to conclude that the explicit finding made by the district court was clearly erroneous. And the government does not believe that Mr. Gibbs has met that standard in the context of this case, given the evidence in this case. Why don't you . . . I mean, she can establish that it's clearly erroneous if the finding isn't supported by the record. So explain to me how this finding is supported by the record, if you've got these two little blue pills in the kitchen and the gun in the attic. Yes, Your Honor. Well, I would first note the district court was very troubled by the fact, and this came up multiple times in reference to the sentencing, that by Mr. Gibbs' own admission, he is a drug addict. And specifically to Alprazolam. But I also make a note in the PSR references that he also regularly consumes marijuana laced with cocaine. And that he does so on multiple occasions during the week. So, undeniably, when law enforcement executed the search warrant at this house, they found two pills of Alprazolam. But the reasonable inference, looking at the totality of the evidence in the record, including some evidence here of drug trafficking, and I think that does bear on this analysis. But he's a drug addict, what drug? I mean, there was a search warrant to search for other drugs. This is a prescription pill. Yes, Your Honor. But by Mr. Gibbs' own admission, that he does regularly consume other forms of narcotics, including marijuana laced with cocaine. So while they did only find a small amount of drugs in the house during the search . . . But I can see if he's charged with possession of marijuana laced with cocaine, and he's addicted to that, and there's a gun in the attic, then I can see a connection. But I'm having a hard time figuring out a connection between two Xanax pills, prescription drugs, and a gun in the attic. Yes, Your Honor. The connection would be that there's a reasonable inference that it's not just the Xanax pills that are at issue in this case. That Mr. Gibbs commonly has Xanax, which he's admitted that he's addicted to, and other narcotics within the house that he uses. But she didn't make a finding about other drugs. She did find that there was cocaine residue. Well, but she did not find that the firearm facilitated other drug possession, right? It was the pills. That's correct, Your Honor. That's the finding we have, whether it's clearly erroneous or not. That's the finding. That's correct, Your Honor. Although I will say I don't think it's been seriously disputed in the record that Mr. Gibbs did distribute cocaine preceding the search, and that there was trace amounts of cocaine found on drug distribution paraphernalia in the house. And so when assessing whether or not that firearm was there coincidentally, considering the totality of the circumstances in this case, I know the district court tied it specifically to the Alprazolam, but if you look at the totality of the evidence and considering whether or not that finding is clearly erroneous, and the district court did note that she was disturbed by the presence of the drug trafficking paraphernalia in the house. But he wasn't charged with any of that. That's correct, Your Honor. But it is undisputed that it was there and that there were two controlled buys made from Mr. Gibbs predating it. I understand the district court didn't think that there was sufficient evidence to base a finding on that, and we disagree with that. We do think the evidence would have permitted the district court to rely on a drug trafficking offense. There was evidence to substantiate that Mr. Gibbs was drug trafficking out of the house. The district court didn't think there was sufficient evidence. I don't think she made a negative fact finding that it wasn't occurring. Well, see, I think that there has to be enough evidence supported by the record to show that the possession of the gun was for the purpose or effect of possessing the Xanax. Am I incorrect about that? I think in relation to the district court's explicit fact finding, yes. So returning back to Your Honor's original question about the drugs and what evidence is there to support the district court's fact finding, I would say that she was very clear that she was concerned about Mr. Gibbs' addiction to Alprazolam. She also found, based on her experience in drug cases, that Alprazolam is a valuable street drug. And I understand, like I said, at the time the search warrant was executed, two pills were found, and I think the government proffered that that was about $23 a pill. The district court seemed to think that that would be enough, and I don't think that's clearly erroneous given. That's valuable? The district court seemed to think so. I'm asking you. I think if you have an addiction to a substance or if you're So value is just relative to the individual. We don't place any sort of objective value on If a drug dealer has $100,000 in his stash but he's a multimillionaire because of the proceeds he's made, $100,000 to him is not valuable? No, I would agree that $100,000 is valuable in that circumstance. I would think that in drug cases, value is more relative and it's not It's existing in that context. It's not necessarily based on a numeric value. Somebody who has a serious addiction to drugs, to a particular drug, would place a greater value on that than maybe just the value of $43.  Yes, Your Honor. The clearly erroneous standard is a very difficult standard for an appellant to meet. But in this circumstance, you've got five circuits that have reversed under that standard the application of this enhancement for a mere possession offense. You've got the third, you've got the fifth, you've got the sixth, and you've got the eighth. And they've had no problem saying reversed and remanded clearly erroneous. So at least five of our sister circuits really haven't had an issue. And what they've said is that the sort of inferences, the presumptions you get from proximity and trafficking offenses don't apply when all you're doing is possessing for personal use. Why do you think those cases are wrongly decided? Well, I would note in some of those particular cases, the district court was reversed. The application of the enhancement was reversed because the district court did not make an explicit fact finding, which is what we have here. Or the district court made a fact finding that was based solely on mere proximity and didn't weigh any other factors. If you look at the eighth circuit, I think it's the Swanson case, they affirmed an instance where the defendant was in simultaneous possession of, I believe it was cocaine in a firearm in his vehicle. And the reason was in the eighth circuit, the inference is permissible if it's more than drug residue. And it's going to depend on the particular circumstances and facts of each case. I will note there are facts in some of the other cases that really would cut against an argument that the firearm facilitated or had the potential to facilitate the possession. And I think in those cases, contrary to what we have here, in some of those cases, the amount truly really was negligible. I think in Jeffrey's, the court found that it was $10. And I understand there's not a huge difference between perhaps $10 and $43. But if you're addicted to a substance. Were the two tablets legally possessed? They were not legally possessed, Your Honor. Why not? Because he did not have a prescription to possess them. And I don't think that's been disputed in the record. His possession of the Alprazolam was not legal. Does that matter, the type of felony offense? In other words, if you're dealing with a substance that is illegal and cannot be obtained by prescription, for example, cocaine, right, or heroin, do you draw more of an inference of a facilitation than you do with something where the person could have gotten it with a prescription but didn't have a prescription for it? I think it would depend on the facts of the case and the particular defendant's relationship with that particular drug. And I would hearken back to this case that Mr. Gibbs is admittedly addicted to Xanax. Well, there's any evidence they were dealing with drugs. With opioids, that's a prescription drug, too. And it's, of course, one of the highly addictive drugs in the country and it's an enormous social problem. But it's legally possessed without a prescription. Here you have another drug that's also addictive. But I have some concern about the character of the drug itself. Specifically, it's a simple possession. When you move to simple possession, you are away from dealing. Then you're into personal use. Now you're in the personal use of a drug that's lawfully possessed. And then you're going to attach criminal consequences to that. Yes, Your Honor. You're going to punish him for that. Yes, Your Honor. But I think this hearkens back to the well-established relationship. Well, let's suppose that he was addicted to opioids. You have a large company and the police go in and there are opioid fields there and there's a gun. And he's a felon. Yes, Your Honor. And our position in that case would be that the gun clearly had the potential to facilitate. The felony offense, excuse me. He locked the pistol in the attic. Right. He locked the pistol in the attic to protect for two pills. Well, for the potential. Does the record support any more than that? I do believe that it does. I understand that the firearm was in an attic, but the firearm was stolen. It had an extended magazine with 31 rounds of ammunition. I don't think those are arbitrary facts. And I know, again, that it was in the attic. And we don't have a clear idea of the proximity between the firearm and the drugs. But Mr. Gibbs did plead guilty to possession of that firearm. And I think during sentencing that all parties agreed that the issue was, is he going to have to stand on something to get into the attic? And I don't think that's really dispositive of this issue. Because if you look at Flannery or even the Rind case, in that case, there were firearms that were disassembled and unloaded. And the court found and concluded that, well, they were accessible enough. They could have easily put it together and loaded the gun. They could have gotten ammunition. I would say in this case, compared to Flannery or compared to Rind, that this is a firearm that's maybe more easily accessible. Well, the evidence strongly suggests the man was dealing drugs. However, the proximity requirement is simply not there. And so you fail in your proof on proximity. And it looks like then, failing on proof on proximity, suddenly you focus on a rather unusual circumstance of attaching criminal consequences to a drug lawfully possessed. I agree with Your Honor. And my response to that would be that proximity is one of several considerations to take into account. Well, it is. But that's the, it was the one of proximity that took out the trafficking. And the suggestion is he was trafficking all of the indicio that they found. They didn't find any drugs. And the transactions he was in were away from the property, et cetera. So that goes out. Then you're left with this one finding. Yes. But, and again, I think that the facts that, as described by the district court, support a finding. And I'd like to note, in the case law here, it's not that the firearm actually facilitated. It's that the defendant would be willing to use the firearm to facilitate his simple possession offense. And obviously that burden, the inferences are much more powerful when you have a drug distribution crime. But here we have an individual with a highly addictive substance that he's admittedly addicted to. And the question is, could, would, is there reasonable inference that Mr. Gibbs would use that firearm to protect his drugs if he had to, to protect himself while he's using them? And the district court came to the conclusion that, yes, under the circumstances of this particular case,  Which case do you think is the best one in a possession scenario that sort of gravitates toward your position in this case? I would point to United States v. Smith. And this is a case that I think that actually, the facts are that the defendant, Which circuit is that from? It's the 11th Circuit. It's a 2007 case. And I think it's interpreting the guideline before the 2000, before Amendment 691. And my understanding is that at least our circuit's precedent wasn't really altered by Amendment 691. The standard has always been facilitate or the potential to facilitate. But in Smith, the facts were that the defendant was seen attempting to conceal a baggie of cocaine. And they didn't even prove it was actually cocaine. And attempting to conceal a firearm in conjunction. And this circuit found that that was enough on an alternative basis to sustain the application of the enhancement. And I'd say that's less facts than what we have. And on both, according to your description of that case, he had both things on him. Yes. At the same time. At the same time. Right. But other than that, it was merely, it was proximity and the court affirmed. I see my time is running out. And I'd also, the government's position is also that any error in this particular case would be harmless. And I think if you read the sentencing transcript and its totality and you consider the district court's comments. Where it posed a variance below based on the range without the enhancement. And said that, you know, she cited two specific reasons. One of which is that the defendant was trafficking drugs. And I see my time is up. So we'd ask for you to please affirm the sentence of the district court. Thank you. Thank you, counsel. That's a lot. You preserved some time. Yes, I have. Thank you. Just a couple points that I'd like to make. Most importantly is just that, and I think Judge Higginbotham might have pointed this out. That the proximity standard or piece of evidence is completely off the table here. The proximity, if you read the commentary, the proximity standard of having the gun close to drugs. Well, let me pick you up on that. What do you do with Carril Ayala? So in Carril, I think that what the court was doing there was talking about the fact that there is a difference between in connection and then like the subset of cases that have to do with facilitation. And what they said was that in connection is actually a lower standard than facilitation. The exact language of a firearm found in close proximity to drugs or drug-related items simply has, without any requirement for additional evidence, the potential to facilitate the drug offense. Correct. Now that's the drug trafficking case. Right, exactly. And also, so that was about trafficking. Yes, but why isn't that map on to the proximity of a possession of drug as well? Well, first of all, we don't have proximity in this case. Again, the government did not establish that the firearm was necessarily in close proximity to the drug. And also, I would think that although they didn't specify it, that in Carril, the important thing was that it was a drug trafficking offense. They spent a lot of time in Carril, the court spent a lot of time talking about the difference between the facilitation standard and the just plain in connection standard. And here, this case clearly falls within that commentary 14A, which is about facilitation. It's not about proximity. Well, proximity is physical proximity, accessibility, if you will. This was a Glock pistol with an enhanced magazine to give a 28-pistol load. And it was in an attic, but it was new and it was newly placed there, obviously, according to the evidence. So the physical proximity, it seems to be, it's not lying right there, but it's within the house and quickly reachable by him. It's loaded with an enhanced magazine now. Well, I'm not sure that it was quickly accessible by him. But if anybody got it quickly, he's not out on the street, so he doesn't need it in his pocket. He's in his house, and so if something comes up in his house, it's not clear to me that he can't get to it. But you can see that if it is proximate, that that's enough? No, not necessarily, not in his home, no. Because, again, the proximity is limited. I know you say it's not proximate, but if he had possessed it in proximity to this drug, is that enough? No, I don't believe in his home that that would be enough. Why not? Because I don't believe, so one of the things that they talk about, or that's been discussed in a lot of the cases, is when the, one of the ways that a gun or a firearm can facilitate a simple possession is when it emboldens a defendant out in public, gives them, maybe gives them the confidence to be out in public or to know that they're protecting it from someone who might come up to them on the street and try and steal their drugs. But that just wasn't the case here. He was in his home, and so even if the gun had been, let's say the pills had been in the cabinet and the gun had been on the kitchen counter, there's still, just because they're there, that doesn't mean, he's just in his home, he's not expecting anyone to come. But you're talking about facilitation. It has to be facilitation. I understand, but it's proximity and facilitation that go hand in hand. The accent, you're... I think it's something, I think that it certainly should be considered, but if we're saying that proximity satisfies the facilitation standard, then what we're doing is completely gutting the Sentencing Commission's commentary. Because why would they make that distinction when they say proximity for trafficking, but not for other felonies, including drug possession? If we're going to say that proximity is enough, then why do we have the difference in the commentary? I think that there needs to be more, and I think that that's what's so important here, is that the other circuits have really addressed in published opinions this very unique situation of just a felony drug possession. So we would ask that this court do the same in reverse and remand for resentencing. Thank you, counsel.